UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

CHARLES TONGE,

                              PLAINTIFFS

                -against-

THE CITY OF NEW YORK, DETECTIVE SAID SALIM,
SHIELD NO. 5068 , DETECTIVE ABRAHAM GARCIA,
DETECTIVE RALPH SHERLOCK, SHIELD NO. 6933,
DETECTIVE TIMOTHY GARCIA, SHIELD NO. 2229,
SERGEANT MICHAEL INGRAM, SHIELD NO. 1727,
SERGEANT WILLIAM SOMMER, SHIELD NO. 2586,
LIEUTENANT MATTHEW DAVIS, and DETECTIVE
MICHAEL DIFORTE,

                              DEFENDANTS

------------------------------------------------------------------------ x

FIRST AMENDED
COMPLAINT AND JURY
DEMAND

14-cv-3934 (LGS)

Plaintiff Charles Tonge, by his attorneys, Stoll, Glickman & Bellina, LLP, for his complaint
allege as follows:

### PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for

the violation of his Fourth and Fourteenth Amendment rights.

2.    The claim arises from a July 22, 2011 incident in which Officers of the New York City

Police Department ("NYPD"), acting under color of state law, intentionally and willfully

subjected plaintiff to false arrest and malicious prosecution.

3.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further relief as

the Court deems just and proper.

### JURISDICTION

4.    This action arises under the Fourth and Fourteenth Amendments to the United States

Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of

New York.

5.    The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

VENUE

6.    Venue is laid within the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District.

PARTIES

7.    Plaintiff Charles Tonge is a resident of Franklin County in New York State.

8.    The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9.    Detective Said Salim, Shield No. 5068, Detective Abraham Garcia, Detective Ralph Sherlock, Shield No. 6933, Detective Timothy Garcia, Shield No. 2229, Sergeant Michael Ingram, Shield No. 1727, Sergeant William Sommer, Shield No. 2586, Lieutenant Matthew Davis, and Detective Michael Diforte, were at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of an agent, servant and employee of the City of New York.  On information and belief, the above named individual defendants were involved in

the illegal arrest of plaintiff and/or failed to intervene in the actions of their fellow officers. The defendant police officers are sued in their individual capacity.

10.    At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

<u>FACTUAL ALLEGATIONS</u>

11.    On July 22, 2011, plaintiff Charles Tonge was a passenger in a motor vehicle that was being driven by its owner, Aggrie Byas. There were also two other passengers in the vehicle at the time.

12.    The vehicle was stopped without any valid legal reason in Manhattan, New York, by defendant police officers.

13.    Upon information and belief, no illegal contraband was recovered from said vehicle or any of its occupants.

14.    Nevertheless, all four occupants of the vehicle including Plaintiff were placed under arrest by defendants.

15.    Defendants falsely alleged that they had recovered a firearm from the trunk of Mr. Byas' vehicle.

16.    Defendant SAID SALIM conveyed those false allegations to members of the District Attorney's Office, and swore to those false allegations in criminal court documents.

17.    As result of said false, sworn allegations, plaintiff was arraigned in New York City Criminal Court.

18.    Plaintiff was charged with criminal possession of a weapon, unlawful use of a police uniform or emblem, and possession of an unauthorized badge.

19.    Plaintiff was assigned bail and held in the custody of the City of New York at the

detention complex located at Riker's Island.

20.    Plaintiff continued to be held until approximately April 2013 at which time he was released on his own recognizance.

21.    All charges against plaintiff were later dismissed.

22.    Defendants lacked probable cause or reasonable suspicion to believe plaintiff had been involved in any illegal activity.

23.    At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights.  The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.  They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

24.    During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

DAMAGES

25.    As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

a.    Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution;

b.    Violation of his rights to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;

c.    Loss of liberty;

d.    Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

e.      Economic loss.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 – as to Individual Defendants)

26.  The above paragraphs are here incorporated by reference.

27. Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and have conspired to deprive him of such rights and are liable to plaintiff under 42 USC § 1983.

28. Defendants' conduct deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiff of his right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

29. Defendants falsely arrested plaintiff, maliciously prosecuted him, and failed to intervene in each other's obviously illegal actions.

30. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(42 U.S.C. § 1983 – Municipal And Supervisory Liability as to Defendant City of New York)

31. The above paragraphs are here incorporated by reference.

32. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.  The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and

false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

33. The City was aware, or should have been aware that defendant SAID SALIM had testified falsely in at least two judicial proceedings prior to July 22, 2011. On or before April 24, 2007, defendant SAID SALIM was found to be incredible after testifying in a probable cause hearing before the Honorable Roger Hayes, in New York County Supreme Court, in the matter of The People of the State of New York v. Frank Brandon, Indictment Number 0694/2006. That case involved the seizure of a quantity of narcotics. Judge Hayes ruled that defendant SAID SALIM'S testimony was implausible and was contradicted by the testimony of other witnesses. As a result of defendant SAID SALIM'S false testimony in that matter, the District Attorney of New. York County filed a written document with the court in which it dismissed the indictment against Frank Brandon as a result of the false testimony of defendant SAID SALIM.

34. Moreover, defendant CITY OF NEW YORK was aware or should have been aware that on or about November 11, 2010, defendant SAID SALIM was found to be incredible by the Honorable Marci Kahn after testifying in a probable cause hearing in the matter of The People of the State of New York v. Wayne Davis and Jose Martinez, Indictment number 03447/2009, regarding the seizure of a large quantity of narcotics. In that case, defendant SAID SALIM'S testimony was contradicted by a surveillance video that recorded the incident. As a result of defendant SAID SALIM'S false testimony in that matter, the District Attorney of New York County filed a written document with the court in which it dismissed the indictment against Wayne Davis and Jose Martinez. Prior to filing the written dismissal the prosecutor represented to the court that defendant SAID SALIM, and his partner at the time defendant TIMOTHY GARCIA, refused to cooperate with the District Attorney's investigation into the matter, refused

to provide the District Attorney's office with requested documents, and both had obtained legal counsel. On information and belief, the matter is being investigated by the Office of Official Corruption and the Internal Affairs Bureau of the New York City Police Department.  Defendant SAID SALIM was subsequently arrested and charged with perjury related to this incident.

35. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2012, New York City paid out over $131 million for the fiscal year, compared to 2011, when it paid out more than $166 million, and 2010, when it paid $128 million.[1] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[2] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

36. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.  Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial

---

[1] Mayor Michael Bloomberg's preliminary Management Report for FY 2013, available at http://www.nyc.gov/html/ops/downloads/pdf/pmmr2013/2013_pmmr.pdf, see page 6, last visited on June 25, 2013.

[2] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953, October 15, 2010 last visited on June 25, 2013.

liability." <u>Carlson v. Green</u>, 446 U.S. 14, 21, (1980), <u>citing</u> <u>Imbler v. Pachtman</u>, 424 U.S. 409, 442, and footnote 6 (1976).

37.  However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.  In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

38. The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

39. The aforesaid event underlying plaintiffs' factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.  Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

40. The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

41. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

42. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits.  Alan Hevesi, as New York City

Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

43. The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the lack criminal evidence that such stop and frisks actually produce, and despite the humiliation, inconvenience and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result. In 2008, of the 531,159 New Yorkers were stopped by the police, 465,413 were totally innocent (88 percent). From the total, 271,602 were black (51 percent); 167,111 were Latino (32 percent); and 57,407 were white (11 percent). In 2007, of the 468,732 New Yorkers were stopped by the police, 407,923 were totally innocent (87 percent). From the total in 2007, 242,373 were black (52 percent), 142,903 were Latino (31 percent), 52,715 were white (11 percent).[3]

44. The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[4]

---

[3] See New York Civil Liberties Union "Stop and Frisk Report" available at http://www.nyclu.org/issues/racial-justice/stop-and-frisk-practices last visited on June 25, 2013.
[4] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited on June 25, 2013.

45. The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB.  In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.  The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

46. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct.  In 2002, the percentage of officers who were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[5] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized.   Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions.   This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight

---

[5] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006", available at: http://www.nyclu.org/files/ccrb_failing_report_090507.pdf, last visited on June 25, 2013.

mechanisms.

47. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct.  Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

48. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

49. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action.  This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

50. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.      In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.      Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.      Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.      Granting such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.


DATED:          January 30, 2015
               Brooklyn, New York                        Respectfully yours,

                                                         By: Nicholas Mindicino, Esq.
                                                         Stoll, Glickman & Bellina, LLP
                                                         Attorneys for Plaintiff
                                                         475 Atlantic Avenue, 3rd Floor
                                                         Brooklyn, NY  11217
TO:    City of New York                                  (718) 852-3710
       Corporation Counsel Office                        (718) 852-3586
       100 Church Street                                 NMindicino@stollglickman.com
       New York, NY  10007

       Detective Said Salim, Shield No. 5068 ,
       Housing Bureau - Bronx/Queens Borough
       737 Melrose Avenue, Bronx,
       New York 10451

Detective Abraham Garcia, Detective
c/o Office of the Corporation Counsel
100 Church Street
New York, NY  10007

Ralph Sherlock, Shield No. 6933,
NYPD – Firearms Suppression Investigations
One Police Plaza, Room 1310
New York NY 10038

Detective Timothy Garcia, Shield No. 2229
NYPD – Firearms Suppression Investigations
One Police Plaza, Room 1310
New York NY 10038

Sergeant Michael Ingram, Shield No. 1727
NYPD – Drug Enforcement Task Force
99 10th Avenue, 6th Floor
New York NY 10019

Sergeant William Sommer, Shield No. 2586
NYPD – Counter Terrorism Division
One Police Plaza, Room 1109
New York NY 10038

Lieutenant Matthew Davis
One Police Plaza
New York NY 10038

Detective Michael Diforte
One Police Plaza
New York NY 10038